Roger N. Heller (CA Bar No. 215348)
rheller@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Phone: 415.956.1000
Fax: 415.956.1008

Brad Ponder (DC Bar No 1612774; AL Bar No: 0965-P56P)*
brad@ponderlegalgroup.com
**PONDER LEGAL GROUP**
3221 M Street, NW
Upper Floor
Washington, DC 20007
Phone: 888.201.0305
Fax: 202.988.2135

**Pro Hac Vice* application to be submitted

*Attorneys for Plaintiff and the Proposed Class*

(Additional counsel listed on signature page)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KHALIL ABDUL-AZIZ, individually and on behalf of all others similarly situated and for the benefit of the general public,<br><br>Plaintiff,<br><br>v.<br><br>ENFIN CORP., HATCH BANK, and DOES 1-10,<br><br>Defendants. | Case No. '25CV1745 JO AHG<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

Page

NATURE OF THE CASE ..... 1
PARTIES ..... 3
JURISDICTION AND VENUE ..... 4
FACTUAL ALLEGATIONS ..... 5
A. Background. ..... 5
B. The Hidden Fee Scheme. ..... 7
1. Defendants' Sales Model and Representations and Omissions to Consumers. ..... 7
2. Defendants' Hidden Fee. ..... 10
3. The Hidden Fee is a Finance Charge. ..... 11
4. Defendants Rely on Contractual Fictions to Try to Evade Disclosure Requirements. ..... 13
5. The Hidden Fee is Not an Amount Financed. ..... 13
C. Plaintiff Falls Victim to Defendants' Scheme. ..... 16
CLASS ALLEGATIONS ..... 21
CHOICE OF LAW ..... 23
CAUSES OF ACTION ..... 23
COUNT ONE VIOLATION OF TRUTH IN LENDING ACT ..... 23
COUNT TWO VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ..... 28
COUNT THREE VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ..... 31
COUNT FOUR VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ..... 35
COUNT FIVE NEGLIGENT MISREPRESENTATION ..... 38
PRAYER FOR RELIEF ..... 39
DEMAND FOR JURY TRIAL ..... 40

Plaintiff Khalil Abdul-Aziz ("Plaintiff"), individually and on behalf of all others similarly situated and for the benefit of the general public, brings this action against Defendants EnFin Corp., Hatch Bank, and Does 1 through 10, alleging as follows:

## NATURE OF THE CASE

1. Defendants, who specialize in providing consumer loans for residential solar panel systems (herein "Systems"), violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and state consumer protection laws and common law, including by failing to disclose to Plaintiff and the proposed Class (described below) the existence of a hidden fee Defendants retained as part of the financing of Systems.

2. Systems are frequently marketed to consumers at their homes by door-to-door salespeople using standardized documents and scripts. These salespeople pitch the purchase, installation, and financing of Systems. The sales pitch has three economic components: lowering energy costs, reducing income taxes through government subsidies, and borrowing cheaply from friendly lenders.

3. The sales model that Defendants utilized, and continue to utilize, is highly profitable – but also illegal. While the quoted interest rates (i.e., for financing) appear attractive, they conceal a large upfront fee charged by Defendants and secretly added to the stated price of the System. This hidden fee—typically between 10% and 40% of the total amount financed—is never disclosed to the consumer.

4. Thus, the amount financed, purportedly just for the purchase and installation of the equipment, is estimated to be between 10 and 40 percent more than the actual cash purchase and installation price. Defendants retain the difference between the loan amount and the amount paid to the installer for the Systems as an undisclosed fee. This scheme raises the effective cost of borrowing to predatory levels.

5. Another practical result of this scheme is that its victims are tricked into *financing* a hidden fee that is neither disclosed nor disbursed by the lender or broker. The victims are forced to pay monthly principal and interest to Defendants on the undisbursed amount.

6. Consumers reasonably rely on the statements and disclosures provided in deciding whether to purchase, install, and finance a System. Defendants' omissions and misrepresentations to consumers induce them to finance their Systems through Defendants.

7. Loan inflation schemes like this were commonplace prior to the passage of TILA. Now, to protect consumers from this fraudulent behavior, TILA requires that such fees be disclosed by the lender as a finance charge and not bundled in the general amount financed category. This disclosure requirement, when adhered to, allows consumers to make informed decisions about the actual cost of such credit.

8. Several state attorneys general have sued solar panel financing companies with business models similar to that of Defendants, for their deceptive business practices and consumer fraud.[1]

9. Plaintiff brings this action for Defendants' violations of TILA, 15 U.S.C. § 1601, *et seq.*, and of state common law and applicable state consumer protection statutes.

10. This action seeks to remedy this wrongdoing and provide justice to those who have been injured by the Defendants' deceptive practices, as well as to protect the general public from Defendants' ongoing false and misleading marketing.

11. Plaintiff, by this action, seeks a public injunction to enjoin Defendants from their false and misleading marketing and advertising practices alleged herein,

---

[1] *See* Compl. [Dkt. 1-1], *State of Minnesota v. GoodLeap LLC, et al.*, No. 0:24-cv-01181-KMM-DTS (D. Minn.), *State of Tennessee et al. v. Ideal Horizon Benefits, LLC, et al.*, No. 3:23-cv-00046-DCLC-JEM (E.D. Tenn.).

and to require Defendants to disclose to the consuming public the true costs of financing.

12. Plaintiff further seeks, on behalf of himself and the proposed Class (described below), damages, statutory damages, restitution, pre- and post-judgment interest, attorneys' fees and costs, injunctive relief to enjoin Defendants' ongoing violations, and other equitable relief, including without limitation modification of the loan terms and payment requirements going forward for Plaintiff and the Class, to conform to the interest rate and APR terms represented by Defendants and to reflect the actual costs of purchase and installation of their Systems (i.e., without the Hidden Fee).

## **PARTIES**

13. Plaintiff Khalil Abdul-Aziz is a natural person. He resides at 1130 West Rowland Avenue, West Covina, California 91790. Plaintiff is a California citizen.

14. Defendant EnFin Corp. ("EnFin") is a Delaware corporation, with its principal place of business at 300 Spectrum Center Drive #500, Irvine, CA 92618. EnFin's registered agent for service is CT Corporation System, 330 North Brand Boulevard, Glendale, California 91203. EnFin is a California citizen and resident.

15. Defendant Hatch Bank ("Hatch") is a "digital bank" and a California corporation, with its principal place of business at 1001 W. San Marcos Boulevard, Suite 125, San Marcos, CA 92078. Hatch's registered agent for service is Jessica Kennedy, 1001 W. San Marcos Boulevard, Suite 125, San Marcos, CA 92078. Hatch is a California citizen and resident.

16. At all pertinent times, EnFin and Hatch worked together and in collaboration with each other, and authorized the conduct of each other, as to the conduct that is alleged herein.

17. Defendant Does 1 through 10 (the "Doe Defendants") are the successor holders of Plaintiffs' and the Class members' loans, whose identities are currently unknown to Plaintiff.[2]

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over Plaintiff's TILA claims pursuant to 15 U.S.C. § 1641(e) and 28 U.S.C. § 1331.

19. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise from the same event or transaction as Plaintiff's TILA claims.

20. This Court also has subject matter jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1332(d)(2), because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000, exclusive of interest and costs. The total claims of members of the proposed Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2). The proposed Class includes consumers from multiple states that are different from Defendants' states. Most of the members of the proposed Class are citizens of a state other than California, where this action is being filed, and the total number of members of the proposed Class is greater than 100.

21. This Court has personal jurisdiction over Defendants because Defendants EnFin and Hatch are headquartered and reside in California,

[2] Under the Federal Trade Commission's Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses, 16 C.F.R. section 433.2, commonly known as the "Holder Rule", Does 1 through 10 are liable for Defendants' loan-related misconduct towards Plaintiff and the Class.

purposefully directed their business activities toward California, and have had and continue to have substantial contacts in California.

22. This Court also has specific jurisdiction over Defendants because Plaintiff's and the Class' claims for relief arise from and relate to illegal acts committed by Defendants within California.

23. Venue is proper in this District. Defendant Hatch is headquartered and resides in this District and both Defendants EnFin and Hatch are subject to personal jurisdiction in this District and regularly conduct business in this District. Further, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

24. Defendants violated, and continue to violate, state and federal consumer protection laws by their conduct alleged herein, including by failing to disclose, to Plaintiff and the Class, the existence and retention by Defendants of a significant financing fee (the "Hidden Fee"). Instead of disclosing the actual amount of funds available for use by Plaintiff and the Class, Defendants disclosed an inflated "Amount Financed" dollar figure that included the Hidden Fee. Plaintiff and the Class were induced to finance Systems by misrepresentations and omissions regarding the true cost of borrowing.

### A. Background.

25. In recent years, an increasing number of homeowners have chosen to purchase, install, and finance Systems, which are solar photovoltaic panels (solar PV) affixed to a roof or other on-premises structure to generate electricity and thereby reduce, eliminate, or invert household electric utility costs.

26. Growth in the home solar industry has been driven by many factors, including increasing consumer demand for clean energy and falling prices for solar PV panels. The growth of the solar industry also has been financially incentivized

by the United States government through the provision of the Residential Clean Energy Credit (RCEC) and by some state incentive programs.

27. The federal RCEC currently allows homeowners to take a credit of up to 30% of the cost of their System from their federal income tax obligations on a dollar-for-dollar basis.[3] However, the RCEC may only be claimed for purchase and installation costs; it may not be claimed for borrowing costs, such as interest or loan origination fees. Further, under federal income tax regulations promulgated by the Internal Revenue Service, the credit amount received cannot exceed the amount owed in tax.

28. Still, the existence of the RCEC has created significant profit opportunities for solar power system financing companies like Defendants. Defendants, including via door-to-door salespeople and on Defendant EnFin's website, have made pervasive material misrepresentations and omissions regarding the extent to which customers and prospective customers would benefit from the RCEC.

29. Often – and contrary to the actual IRS rules – the salespeople verbally represent to homeowners that they can claim a tax credit for the full amount of their purchase, known as the "contract price," and that the homeowners can claim the RCEC irrespective of tax liability.

30. EnFin's website, which is a form of marketing communication, likewise misrepresents consumer RCEC eligibility.

31. For example, EnFin's website states that "You may be eligible to claim up to 30% of your entire residential solar system cost, as a federal tax return credit." (https://www.enfin.com/homeowners (last visited July 8, 2025)). That is untrue because the solar system cost, i.e., the contract price, includes undisclosed finance charges (the Hidden Fee), which are not RCEC-eligible. It is also untrue

[3] Residential Clean Energy Credit, IRS, https://www.irs.gov/credits-deductions/residential-clean-energy-credit (last visited July 8, 2025).

because it fails to disclose the impact of one's income tax obligations on RCEC eligibility.

### B. The Hidden Fee Scheme.

#### 1. Defendants' Sales Model and Representations and Omissions to Consumers.

32. EnFin is a self-described "solar manufacturer backed financing institution."




(https://www.enfin.com/partners (last accessed July 8, 2025) (highlighting added)). EnFin holds itself out to the community at-large as a "trusted lender that specializes in financing residential solar panel systems."




(https://www.enfin.com/post/what-is-a-solar-loan-and-what-are-their-advantages

(last visited July 8, 2025).) It advertises on its website that it "provides affordable residential solar project loans to homeowners."




(https://www.enfin.com/homeowners (last visited July 8, 2025).)

33. EnFin utilizes local installers to engage customers throughout California and the United States and sell Systems at an inflated price. The door-to-door salespeople who pitch Systems to consumers typically work for solar power system sellers and installers, which are sometimes one and the same. These companies have standing business relationships with EnFin pursuant to which they present EnFin's loan proposals and agreements to consumers. Therefore, these door-to-door salespeople act as and are EnFin's agents and representatives.

34. EnFin dictates the terms and methods solar companies use to market and sell its loans. Under its form agreements with solar companies (the "Service Agreement"), EnFin agrees to provide solar companies with training on its loan programs, instruction materials, and ongoing support concerning marketing and other aspects of EnFin's loan programs. Solar companies agree to vigorously promote EnFin's loan product to consumers and are delegated responsibility to sell the Systems and promote and facilitate access to EnFin's loan products. EnFin provides onboarding sales training and ongoing trainings to partner solar companies.

35. Partner solar company representatives visit consumers' homes and promise, standardized documents significant energy bill savings if they purchase

the Systems, and vigorously promote to the customer financing the Systems through EnFin. The representatives utilize standardized documents and scripts. As outlined herein, during these in-home sales pitches, the salespeople, using standardized documents and scripts, mislead homeowners about the true cost of purchase and installation, true costs of financing, true interest rates and APRs, potential energy savings these systems offer and other potential savings, incentives, and discounts, such as tax credits or “energy buyback” programs.

36. Once the consumer agrees to finance the System with EnFin based on the standardized sales proposal, the sales representative will visit EnFin’s portal and enter the consumer’s name and information to apply for the loan. The salesperson enters the information, the loan product, and loan amount. The transaction is typically done on the salesperson’s tablet or laptop.

37. Once the application is submitted and the credit check is approved, EnFin emails loan documents and disclosures to the borrower at the time of the sale. The loan documents include TILA disclosures, which purport to show, among other things, the finance charges, amount financed, itemization of the amount financed, and annual percentage interest rate (APR).

38. EnFin engages lenders – including Hatch – as financing partners to facilitate the loans.

39. Under the Federal Trade Commission’s Trade Regulation Rule Concerning Preservation of Consumers’ Claims and Defenses, 16 C.F.R. section 433.2, commonly known as the “Holder Rule”, EnFin, Hatch, and Does 1-10 are liable to Plaintiff and the proposed Class for any loan-related misconduct attributable to the solar power system sellers and installers. The form Loan Agreements between Plaintiff and the lender contain a Holder Rule disclosure. (*see, e.g.,* Ex. A hereto, 14.)

**2. <u>Defendants' Hidden Fee.</u>**

40. Defendants close loans by misrepresenting to prospective consumers the true costs of borrowing. Specifically, EnFin presents standardized loan proposals and agreements to homeowners that fail to disclose the Hidden Fee charged as a condition of providing financing.

41. The Hidden Fee is an upfront fee that EnFin imposes at origination and adds to the balance of the loan. The fee is not identified in marketing materials or sales proposals, and it is not included in the "finance charge" or calculated in the annual percentage rate disclosed as the costs of financing in the proposal or loan documents.

42. The Hidden Fee is charged by EnFin on loans as a percentage, believed to typically range between 20 - 30 percent of the actual cost of purchase and installation of the System. The Hidden Fee is then added on top of the actual cost of purchase and installation. The aggregate of those amounts (i.e., the Hidden Fee plus the cost of purchase and installation) is disclosed as the supposed Amount Financed. The Hidden Fee portion is not disbursed to the solar companies for purchase and installation. It is instead withheld from the disbursement and retained by EnFin as a financing cost.

43. In a complaint filed by EnFin in a United States District Court, EnFin described itself as "project financer" that is paid by withholding "the proceeds [of] the homeowner's loan."

> 15. The homeowner's role is intended to be more streamlined. In a well-executed transaction, the homeowner simply agrees to the installation, cooperates in the submission of loan documentation, and then has a solar-power system installed on their home. To pay for that installation, the homeowner enters into a loan with EnFin (or with Hatch Bank). The size of that loan is typically around $40,000, though that number may vary significantly depending on the size and sophistication of the homeowner's solar-power system.
>
> 16. EnFin's role, then, is to act as the project's financer: it funds the project through its payment to the installer, and it receives, in return, the proceeds from the homeowner's loan.

*EnFin Corp. v. Carl Wells, et al.*, No. 1:24-cv-00149-DAE (W.D. Tex.), Compl., 3 [Dkt. 1]) (highlighting added).

44. The Hidden Fee is never disclosed to the consumer, including Plaintiff and the Class.

45. The Hidden Fee is made part of the loan balance that the consumer must repay over time, though a large portion (if not all) of the fee amount is paid by the consumer early if the consumer makes the tax-credit payment or pays the full balance of the loan – as often happens if the consumer sells their home.

### 3. <u>The Hidden Fee is a Finance Charge.</u>

46. Finance Charge is defined in TILA as:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 1026.4(a). *See* 15 U.S.C. § 1605(a) (defining "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit").

47. TILA's enacting regulation, Regulation Z, likewise defines "finance charge" to include any "charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 1026.4(a).

48. A "finance charge" subject to TILA's disclosure requirements, is any cost of the financing arrangement that would not be charged if the consumer paid for the same goods or services in cash.[4]

49. Despite the express requirement that it disclose any added charges in connection with the solar financing agreements they offered to customers, as to Plaintiff and the Class, Defendants elected to conceal the Hidden Fee as part of the total loan principal, omitting this material information and falsely representing that the total loan amount went to pay for the actual cost of the solar panel systems and installation. Defendants concealed and misrepresented this material information because they knew reasonable consumers would not agree to pay such amounts if they knew about the Hidden Fee.

50. As described herein, the Hidden Fee is charged solely as a condition of receiving credit from Defendants. Customers who pay cash for the Systems – instead of financing with Defendants – are not charged the Hidden Fee.

---

[4] *See* 12 C.F.R. Pt. 1026 Supp. I, § 1026.4. (CFPB guidance stating that a "creditor should compare the credit transaction in question with a similar cash transaction" to determine what constitutes a finance charge); *see also, e.g., Cornist v. B.J.T. Auto Sales, Inc.*, 272 F.3d 322, 327 (6th Cir. 2001) ("An increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, *solely because he is a credit customer*, triggers TILA's disclosure requirements."); *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 932 (7th Cir. 1998) (explaining that TILA requires a creditor to "disclose to a consumer buying on credit exactly how much he will pay for that credit"); *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 287 (7th Cir. 1997) (holding that the difference alleged between the price of a car warranty in credit transactions and the price of a car warranty in cash transactions constituted a finance charge that must be disclosed under TILA).

### 4. Defendants Rely on Contractual Fictions to Try to Evade Disclosure Requirements.

51. Federal and state laws require that lenders include all costs imposed as an incident of credit to be included in the calculation of the "finance charge" and "annual percentage rate" be prominently disclosed to consumers.

52. To try to avoid these disclosure requirements and to deceive borrowers, Defendants devised contracts with solar companies that purport to classify the Hidden Fee as an overhead cost incurred by the solar companies – or something similar – rather than a cost of credit. This is a contractual fiction in furtherance of the scheme. Defendants know that the Hidden Fee is not related to the solar company's overhead. When the substance of the transaction is considered over the contractual fictions, it is clear that the Hidden Fee is paid by the borrower as a condition of financing.

53. The pricing structure of the Hidden Fee further illustrates this point. Specifically, the exact percentage charged for the Hidden Fee for a given loan depends on the loan's term and annual interest rate, as selected by the solar company making the sale. Defendants offer various loan products with different durations, rates, and corresponding fees. The Hidden Fee amount also changes based on the loan product selected at the time of closing. These loan options are presented to solar companies to choose from when marketing one of Defendants' loan products.[5] These loan options with varying Hidden Fees are never disclosed to consumers, including Plaintiff and the Class.

54. Consumers who purchase a System with cash would not pay the Hidden Fee and would instead pay a lower price.

### 5. The Hidden Fee is Not an Amount Financed.

[5] The loan options with different interest rates and fees are determined by a formula that Defendants created and enforce. Solar salespersons and installation companies have no authority to deviate from the results of that formula.

55. TILA requires creditors to disclose to the consumer the Amount Financed, which is defined as "the amount of credit of which the consumer has actual use." 29 U.S.C. § 1638(a)(2)(A).

56. In the case of Defendants' practices, the consumer never has actual use of the Hidden Fee, and it is improperly included in the Amount Financed category of the TILA disclosures.

57. The Hidden Fee is never disbursed to the solar companies for the purchase and installation of the System, and should not be included as part of the Amount Financed. The borrower never has "actual use" of the credit.

58. To prevent this type of deception, TILA also requires that a creditor provide an itemization of the Amount Financed or to provide an option for the borrower to request an itemization of the Amount Financed. 15 U.S.C. § 1638(a)(2)(B); 12 CFR 1026.18(c).[6] The itemization must include the following:

> For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable:
>
> (i) the amount that is or will be paid directly to the consumer;
>
> (ii) the amount that is or will be credited to the consumer's account to discharge obligations owed to the creditor;
>
> (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person; and
>
> (iv) the total amount of any charges described in the preceding subparagraph (A)(iii).

15 U.S.C. § 1638(a)(2)(B).

---

[6] A creditor has the option of either providing the written itemization of the amount financed at the time of closing or including a "statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired, and the consumer does not request it." 12 C.F.R. § 1026.18(c)(2). Defendants elected to disclose its "Itemization of Amount Financed" as part of their TILA disclosures in the Loan Agreement. (Ex. A hereto, 18.)

59. Defendants' itemization of Amount Financed fails to meet TILA's requirements. Defendants' itemization expressly – and incorrectly – states the full Amount Financed is "due to" the installation company—in the case of Plaintiff's transaction, HomeLink Solar (EnFin's partner installation company for the installation of Plaintiff's System).

ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Amount Financed: | $ 72,941.00 (e) |
| Amount Due To: | HomeLink Solar |

(Ex. A hereto, 18.)

60. This is a lie. Defendants do not disburse the listed Amount Financed. Instead, the Hidden Fee is retained by EnFin and never disbursed to the partner solar company. The purpose and effect of this disclosure and omission is to deceive the consumer into believing that the full Amount Financed was for the purchase and installation of the System – and to hide the Hidden Fee retained by EnFin.

61. Defendants' form loan documents include a statement that the solar company may provide them with a fee or discount against the amount financed. This statement is also a lie. Defendants are aware, at the time the loan documents are provided, of the existence and exact amount of the Hidden Fee and that the Hidden Fee must be paid as a condition of financing. Furthermore, it is unclear and confusing to consumers to be told that the solar company is providing a "discount" to the lender.

62. Moreover, because the Hidden Fee is improperly included in the Amount Financed, instead of a Finance Charge, the disclosed APR is also incorrect. Borrowers detrimentally rely on these misrepresentations and omissions when deciding whether to purchase and finance Systems.

**C. Plaintiff Falls Victim to Defendants' Scheme.**

63. On or about July 9, 2024, Plaintiff was solicited at his home to purchase and finance a System for his residence. The salesperson who solicited Plaintiff was an employee, contractor, agent, or representative, of Defendants.

64. As a part of the sales pitch, the Defendants' representative made, on behalf of Defendants, the following representations:

a. that purchasing and installing a solar power system would lower Plaintiff's energy costs;

b. that Plaintiff would be eligible to receive a 30% income tax credit against the full amount of the solar power system contract price;

c. that the contract price was the price to purchase and install a solar power system for Plaintiff's home;

d. that the contract price would be $72,941;

e. that the costs of credit were separate and distinct from the contract price; and

f. that Defendants could extend credit to Plaintiff at a low cost.

65. The representations made to Plaintiff were made pursuant to standardized scripts and documents, as part of a systemic, pervasive, broad marketing campaign that Defendants have implemented and directed, and continue to direct, to the general public, including through broad, unsolicited door-to-door marketing and internet marketing on the EnFin website aimed at homeowners and the general public. Through this pervasive campaign and scheme, the general public and consumers throughout California and the United States have been and continue to be subjected to Defendants' false and misleading marketing.

66. In reliance on Defendants' representations and omissions, Plaintiff agreed in principle to obtain a loan from Defendants to purchase a System for his home.

67. Unbeknownst to Plaintiff, the contract price was significantly higher than a comparable cash transaction.

68. To consummate Plaintiff's purchase, Defendants' representative presented several form documents to Plaintiff on an electronic tablet. These documents were generated by Defendants and included a purported TILA Disclosure. (Ex. A hereto, 18.)

69. On July 9, 2024, Plaintiff signed the loan documents with Defendants. The representative secured Plaintiff's electronic signature on these loan documents using the electronic tablet, including using software-based click-through processes. On information and belief, the software used for this purpose is proprietary to EnFin or specifically reviewed and authorized by EnFin.

70. Defendants failed to disclose that a significant portion of the listed contract price was not attributable to the purchase or installation of the System, but instead was the Hidden Fee. None of Defendants' disclosures or representations disclosed this hidden material fact.

71. The exact amount of the Hidden Fee on Plaintiff's loan is unknown, but Defendants are in possession of this information. The Hidden Fee on Plaintiff's loan is believed to be at least 30% of the contract price charged; that is, at least $21,882.

72. Defendants concealed the Hidden Fee and true contract price, and omitted and/or misrepresented to Plaintiff, *inter alia*, the true price of purchase and installation, the basis of the contract price, the true interest rate, the true APR, and the amount Plaintiff could take as a tax credit. Defendants likewise concealed and misrepresented this material information to the other members of the proposed Class.

73. Defendants made these misrepresentations and omissions knowingly and intentionally and with the purpose of inducing Plaintiff and the Class to rely on same in evaluating, accepting, and paying the loan from Defendants.

74. Plaintiff and the Class reasonably relied on these misrepresentations and omissions.

75. Plaintiff read the TILA disclosures, and believed the Amount Financed was for the purchase and installation of the System. Had the disclosures been accurate, Plaintiff would have sought a lower price, and he would have been able to obtain a lower price. If he could not have found a lower price, then he would have elected not to purchase the System.

76. Plaintiff has complied with the terms of the loan agreement with Defendants.

77. Plaintiff was concretely injured by Defendants' acts and omissions because, *inter alia*, they resulted in (i) monetary payments from Plaintiff to Defendants to which Defendants were not properly entitled and (ii) ongoing monetary obligations from Plaintiff to Defendants that Plaintiff would not have accepted had they been fully and accurately disclosed.

78. Each past payment made to Defendants pursuant to the loans subject of this dispute constitutes a concrete and particularized economic injury that has already occurred.

79. Each future payment made to Defendants pursuant to the loans subject of this dispute will constitute a concrete and particularized economic injury when it occurs.

80. The threat of future economic injury is actual and imminent both because Plaintiff continues to be a borrower of Defendants and because Plaintiff is contractually obligated to make monthly payments pursuant to the terms of his loan agreement. Thus, Plaintiff will continue to make such payments and be under monthly threat of future injury until his last payment is made under his loan agreements.

81. This threat of future injury is reinforced in the monthly statement Plaintiff receives from Defendants demanding partial repayment of his loan. Each

such statement states the amount due and the remaining balance at the time of billing. The amount due and remaining balance indicated in the statements themselves constitute false and misleading statements because they are based on illegal loan terms, include amounts Defendants are prohibited by law from charging, or illegally conceal charges Defendants are required to disclose. (The amount due and remaining balance indicated in the statements are also, for the same reasons, inaccurate). Each month, Plaintiff pays the amount due in reliance on the representations made in his loan documents and in the monthly statements that he receives. Plaintiff intends to continue doing so because of the numerous harms that can come from not making payments, including without limitation to his credit score. Further, Plaintiff wishes to remain Defendants' customer on fair and lawful terms.

82. Because Defendants are the parties responsible for soliciting Plaintiff's debt, disseminating the challenged misrepresentations and omissions, drafting the terms of Plaintiff's loans, charging the Hidden Fee, and servicing Plaintiff's loans, including by issuing monthly statements, both past injuries to Plaintiff and threatened future injuries to Plaintiff are directly traceable to Defendants' prior, ongoing, and foreseeably continuing illegal conduct, which Plaintiff challenges here.

83. Absent a judicial decision in Plaintiff's favor that includes injunctive relief, it is likely—and, indeed, all but certain—that Plaintiff will continue to suffer the imminent, concrete, and particularized threatened future injuries described above.

84. Furthermore, Plaintiff has a legal right to rely, now and in the future, on the truthfulness and accuracy of Defendants' representations regarding the loan offerings. And because Plaintiff would seek financing from Defendants (i) to finance future modifications, improvements, expansions, or repairs to his existing System, (ii) to finance new Systems on other properties that he owns or may come

to own, and (iii) to refinance his existing or future System debt, Plaintiff further intends to do new business with Defendants in the future. However, in order to obtain future loans from Defendants on fair and lawful terms, Plaintiff must be able to and wants to be able to rely on the truthfulness of the Defendants' representations, including all those made in Defendants' marketing, advertising, and solicitation communications, loan proposals, closing documents (including TILA disclosures and loan agreements), monthly statements, final bills, and any and all other communications regarding prospective (and ultimately existing) loans. In particular, Plaintiff must be able to rely on Defendants to disclose all required loan information and not to conceal impermissible charges, such as the Hidden Fee or hidden interest. If Plaintiff could so rely, he would accept loan offers from Defendants in the future. Therefore, with respect to new business as well, prospective injunctive relief is necessary to prevent Plaintiff from being wronged again in ways similar to how he was wronged in the past.

85. Forward-looking public injunctive relief is likewise required on a market-wide basis to prevent Defendants from continuing to disseminate false and misleading marketing and other pervasive misleading representations, and from inducing additional members of the general public to obtain loans from Defendants by means of the unfair, fraudulent, unlawful, and misleading practices described herein. Absent such injunctive relief, members of the general public will continue to be exposed and subjected to, and to rely on, Defendants' pervasive false and misleading representations and omissions, including those made through door-to-door and internet-based advertising and marketing, when considering and selecting a loan from Defendants. Because Defendants are the parties responsible for advertising and marketing their products and services to the general public, the harms constituted by or arising from those activities are directly traceable to the Defendants.

86. Any conditions precedent to bringing this action, if any, have been satisfied, waived, or both.

## CLASS ALLEGATIONS

87. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of himself and a "Class" defined as follows:

> All persons in the United States who received a loan from Defendants within the applicable statutes of limitations to finance a residential solar energy power system.

88. Excluded from the Class are (i) Defendants and Defendants' subsidiaries and affiliates; (ii) Defendants' officers, directors, and employees; (iii) entities in which Defendants have a controlling interest; (iv) the judicial officer(s) to whom this action is assigned; and (v) the immediate family members, legal representatives, heirs, successors, or assigns of any party excluded under (i)–(iv).

89. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclass(es) pursuant to Rule 23(c)(5) and/or issues class(es) pursuant to Rule 23(c)(4)

90. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

91. <u>Numerosity</u>: The parties are sufficiently numerous such that joinder is impracticable. Upon information and belief, and subject to discovery, the Class consists of at least thousands of members. Defendants have the administrative capability through their computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

92. <u>Commonality and Predominance</u>: This action involves multiple common questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following: (i) whether Defendants engaged in the conduct alleged herein; (ii) whether Defendants' representations and omissions

were material to reasonable consumers, (iii) whether Defendants' conduct violated TILA; and (iv) whether Defendants' conduct violated state consumer protection laws.

93. Typicality: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendants, as described herein, and are based on the same legal theories.

94. Adequacy: Plaintiff will adequately represent the Class. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated, has retained competent counsel experienced in the prosecution of class actions, and there are no conflicts of interest between Plaintiff and the unnamed members of the Class. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and address the legal issues associated with this type of litigation.

95. Superiority: A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendants' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

96. Additionally, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate corresponding injunctive and/or declaratory relief with respect to the Class as a whole, pursuant to Fed. R. Civ. P. 23(b)(2).

## CHOICE OF LAW

97. Federal law governs the federal TILA claim pled herein. With respect to other claims, California law governs the substantive legal issues in this case. Defendant Hatch's form loan agreements with Plaintiffs and all Class members provide for the application of federal and California law, regardless of the state of residence of the consumer. Moreover, EnFin and Hatch are both headquartered in California, and a substantial portion of their misconduct alleged herein emanated from, occurred in, and was directed from and authorized in California.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. § 1638(a)
### (on behalf of Plaintiff and the Class)

98. Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein.

99. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

100. This Count is brought pursuant to 15 U.S.C. §1640(a) for Defendants' violation of the disclosure requirements of 15 U.S.C. § 1638(a).

101. At all times relevant to this Complaint, Defendants have regularly extended consumer credit or offered consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments that is initially payable to Defendants on the face of the contract, making both Defendants "creditors" within the meaning of TILA, 15 U.S.C. § 1602(g) and Regulation Z, 12 C.F.R § 1026.2(a)(17). In the alternative, to the extent Defendant EnFin is deemed not to be a "creditor" within the meaning of TILA, then Defendant Hatch is a "creditor" within the meaning of TILA.

102. TILA imposes strict liability. Plaintiff need not prove that Defendants intentionally or negligently failed to comply with TILA but only that Defendants' practices violated TILA.

103. TILA exists to ensure "the informed use of credit." 15 U.S.C. § 1601(a). Per the statute:

> The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter *to assure a meaningful disclosure of credit terms* so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and *to protect the consumer against inaccurate and unfair credit billing* and credit card practices.

*Id.* (emphasis added).

104. Regulation Z provides: "The purpose of this part is to promote the informed use of consumer credit by requiring disclosures about its terms and cost . . . ." 12 C.F.R. § 1026.1(a).

105. Defendants' scheme alleged herein, concerning its non-disclosure and retention of the Hidden Fee, violates several of TILA's disclosure requirements as to Plaintiff and the Class, including the material disclosures requirement. TILA defines "material disclosures" as including the amount to be financed, the amount of the finance charges, and annual percentage rate. 15 U.S.C. § 1602(v).

106. As alleged herein, Defendants disclosed inaccurate amounts for these material disclosures to Plaintiff and the Class. As such, the disclosures are ineffective and did not provide clear and accurate disclosure of credit terms.

107. Defendants violated their duty to disclose the Amount Financed, as to Plaintiff and the Class. 29 U.S.C. § 1638(a)(2)(A).

a. For each consumer credit transaction, 29 U.S.C. § 1638(a)(2)(A) requires creditors to disclose to the consumer the Amount Financed, which is "the amount of credit of which the consumer has actual use."

b. Defendants did not provide accurate and meaningful disclosures of the Amount Financed to Plaintiff or the Class. Defendants knowingly and illegally failed to disclose the amount of credit of which Plaintiff and the Class had actual use.

c. Instead, as described herein, Defendants disclosed to Plaintiff and the Class an inflated Amount Financed that, concealed by Defendants, included the Hidden Fee that they retained as a condition of financing.

d. The true Amount Financed was easily calculable, and known, by Defendants.

108. Defendants violated their duty to disclose the Finance Charges as to Plaintiff and the Class. 29 U.S.C. § 1638(a)(3).

a. For each consumer credit transaction, 29 U.S.C. § 1638(a)(3) requires creditors to disclose to the consumer the Finance Charges.

b. Defendants did not provide accurate and meaningful disclosures of the Finance Charges to Plaintiff and the Class.

c. Finance Charges are the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Regulation Z provides that a finance charge "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction." 12 C.F.R. § 226.4(b)(6).

d. The Hidden Fee charged and retained by Defendants, as to Plaintiff and the Class, should have been included in the Finance Charges since it was paid directly or indirectly by Plaintiff and the Class as an incident to the extension of credit.

e. Instead, as described herein, Defendants improperly and illegally included the Hidden Fee in the Amount Financed.

f. The true Finance Charge was easily calculable, and known, by Defendants.

109. Defendants violated their duty to disclose the APR as to Plaintiff and the Class. 29 U.S.C. § 1638(a)(4)

a. For each consumer credit transaction, 29 U.S.C. § 1638(a)(4) requires creditors to disclose the APR.

b. Defendants did not provide accurate and meaningful disclosures of the APR to Plaintiff and the Class.

c. TILA requires that the finance charge be “expressed as an ‘annual percentage rate’, using that term.” 15 U.S.C. § 1638(a)(4). Regulation Z defines "annual percentage rate [a]s a measure of the cost of credit, expressed as a yearly rate." 12 C.F.R. § 226.14(a). Regulation Z provides that "[t]he annual percentage rate is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of value received by the consumer to the amount and timing of payments made." 12 C.F.R. § 1026.22(a)(1).

d. The APR disclosed by Defendants to Plaintiff and the Class is incorrect since it was based on a percentage of the inflated Amount Financed, which contains the improperly included, concealed Hidden Fee. The true APR is much higher than the disclosed amount.

e. The true APR was easily calculable, and known, by Defendants.

110. Defendants violated their duty to provide the Itemization of Amount Financed as to Plaintiffs and the Class. 29 U.S.C. § 1638(a)(2)(B).

a. For each consumer credit transaction, 29 U.S.C. § 1638(a)(2)(B) requires creditors to either provide the written "Itemization of Amount Financed" or to provide the option to receive the itemization. Defendants elected to provide the Itemization of Amount Financed at the time of the loan closing.

b. Defendants did not provide an accurate and meaningful Itemization of Amount Financed to Plaintiff and the Class.

c. Furthermore, Defendants' itemization, as to Plaintiff and the Class, also includes the misleading statement that the total Amount Financed was the cash price of the system. Defendants knew at the time of the disclosure that they would receive the Hidden Fee and not disburse the full Amount Financed. The itemization was made intentionally and knowingly by Defendants to mislead Plaintiff and the Class as to the true cost of credit.

111. Defendants' disclosures and omissions to Plaintiff and the Class were not based on the best information reasonably available to Defendants.

112. Moreover, because of Defendants' failure to provide meaningful disclosures of credit terms, Plaintiff and the Class were not able to compare or properly compare the various credit terms available to them and avoid the uninformed use of credit.

113. Plaintiff and the Class were damaged by Defendants' TILA violations as alleged herein.

114. Pursuant to 15 U.S.C. § 1640, Plaintiff and the Class are entitled to damages, including statutory and actual damages.

115. Pursuant to 15 U.S.C. § 1640, Plaintiff and the Class are entitled to recover attorneys' fees and costs.

**COUNT TWO**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW Cal. Bus. & Prof. Code § 17200, *et seq.* (on behalf of Plaintiff and the Class)**

116. Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein.

117. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

118. By their conduct alleged herein, Defendants violated the "unfair," "unlawful," and "fraudulent" prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

119. By their conduct alleged herein, Defendants violated the "unfair" prong of the UCL, including without limitation by imposing, concealing, and retaining the Hidden Fee; making false and misleading omissions and representations to Plaintiff and the Class about, *inter alia*, the terms of their loans, the costs of financing and the costs of purchasing and installing their systems; and promising a low interest rate and APR and then charging a much higher effective interest rate and APR given the concealed Hidden Fee.

120. Defendants' conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiff and the Class. By their conduct alleged herein, Defendants have already improperly received and retained many millions of dollars from consumers in California and throughout the United States. There is no utility to Defendants' conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm caused by Defendants' conduct alleged herein. There were reasonably available alternatives to the unfair conduct described herein that Defendants could have adopted to further their legitimate business interests.

121. Defendants' conduct alleged herein also violates California public policy, including as such policy is reflected in Cal. Civ. Code § 1750, *et seq.*, Cal. Civ. Code §§ 1709-1710, Cal. Bus. & Prof. Code § 17500 *et seq.*, and California common law relating to fraud.

122. By their conduct alleged herein, Defendants have also violated the "unlawful" prong of the UCL, including by violating TILA and Regulation Z, the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. ("FAL").

123. By their conduct alleged herein, Defendants have also violated the "fraudulent" prong of the UCL by making material misrepresentations and omissions to Plaintiff and the Class, including, *inter alia*, concealing the Hidden Fee and concerning the terms of their loans, the costs of financing, the costs of purchasing and installing their systems, and the true interest rates and APRs.

124. With respect to omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Defendants concealed material information from Plaintiff and the Class; and (c) Defendants made partial representations which were false and misleading absent the omitted information.

125. Defendants' material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

126. Defendants' misrepresentations and nondisclosures deceive and have a tendency to deceive the general public and reasonable consumers.

127. Defendants' misrepresentations and nondisclosures are material, such that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase and financial decisions.

128. Plaintiff and members of the proposed Class reasonably relied on Defendants' material misrepresentations and nondisclosures, in making their purchases and choosing to borrow from Defendants.

129. By their conduct alleged herein, Defendants induced Plaintiffs and Class members to make purchases and carry debt they otherwise would not have made or carried.

130. By their conduct alleged herein, Defendants received money from Plaintiff and the Class that it should not and would not have received otherwise, and that money is subject to restitution.

131. As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent conduct, Plaintiff and the proposed Class members lost money.

132. Defendants' conduct has caused substantial injury to Plaintiff, proposed Class members, and the public. Defendants' conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices. Plaintiff further seeks an order granting restitution to Plaintiff and the Class in an amount to be proven at trial, and other equitable relief, including without limitation modification of their loan terms and payment requirements going forward, to conform to the interest rate and APR terms represented by Defendants and to reflect the actual costs of purchase and installation of their Systems (i.e., without the Hidden Fee).

133. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

134. Absent an injunction, Defendants will continue to engage in pervasive misleading marketing and to mislead members of the general public regarding their loans and will continue to use unfair, fraudulent, and unlawful tactics to induce members of the general public to obtain loans. Defendants' fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they

will be deceived. Plaintiff desires to conduct further business with Defendants and would like to be able to rely on Defendants' representations but cannot do so unless an injunction is issued.

135. Plaintiff individually seeks public injunctive relief, under the UCL, to protect the general public from Defendants' false and misleading marketing and omissions.

136. Plaintiff and the Class lack an adequate remedy at law, including because Defendants' conduct is continuing, requiring injunctive relief not available and/or not entirely available under legal claims, and because monetary and other equitable remedies sought and available under this claim are not available and/or not entirely available under legal claims.

**COUNT THREE**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code § 1750, *et seq.***
**(on behalf of Plaintiff and the Class)**

137. Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein.

138. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

139. Venue is proper under Cal. Civil Code § 1780(d) because Defendant Hatch is headquartered in San Diego County and Defendants Hatch and EnFin both conduct and are conducting substantial business in San Diego County. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as Ex. B.

140. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

141. Systems purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

142. Defendants' provision of credit to Plaintiff and the Class is a "service" within the meaning of California Civil Code section 1761(b).

143. Defendants' provision of credit to Plaintiff and the Class was "furnished in connection with the sale or repair of goods." *See id.*

144. Defendants' provision of credit to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e), as were the purchase and installation of the Systems that Defendants financed.

145. Plaintiff and proposed Class members purchased their Systems for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

146. Defendants' credit offerings were presented to Plaintiff and the Class by means of "home solicitation" within the meaning of California Civil Code section 1761(h).

147. Defendants violated and continue to violate the CLRA, as to Plaintiff and the Class, by engaging in the following practices proscribed by California Civil Code section 1770(a):

a. "[r]epresenting that . . . services have . . . characteristics . . . that they do not have," Cal. Civ. Code § 1770(a)(5);

b. "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9);

c. with respect to interest rates, "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," Cal. Civ. Code § 1770(a)(13);

d. with respect to tax credits, "[r]epresenting that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction", Cal. Civ. Code § 1770(a)(17); and

e. "[a]dvertising, offering for sale, or selling a financial product that is illegal under state or federal law," Cal. Civ. Code § 1770(a)(26).

148. Defendants have misrepresented and continue to misrepresent the terms of their loans, including by failing to disclose the existence or amount of the Hidden Fee.

149. Defendants have directed and do direct these misrepresentations at consumers before purchase through marketing communications provided through home solicitations and online, including through a public website.

150. Defendants have directed and do direct these misrepresentations at consumers after purchase through the loan-servicing documents they provides to consumers.

151. At no time did Defendants disclose the true cost of borrowing to Plaintiff and the Class; instead, Defendants concealed and misrepresented this material information, including the existence and amount of the Hidden Fee.

152. With respect to omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Defendants concealed material information from Plaintiff and the Class; and (c) Defendants made partial representations which were false and misleading absent the omitted information.

153. Defendants' material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

154. Defendants' misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

155. Defendants' misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase and financial decisions.

156. Plaintiff and members of the proposed Class reasonably relied on Defendants' material misrepresentations and nondisclosures, in making their purchases and choosing to borrow from Defendants.

157. As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and the proposed Class members have been damaged.

158. Defendants' conduct has caused substantial injury to Plaintiff, proposed Class members, and the public. Defendants' conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendants from committing its CLRA violations.

159. Plaintiff also seeks attorneys' fees and costs.

160. Absent an injunction, Defendants will continue to engage in pervasive misleading marketing and to mislead members of the general public regarding their loans and will continue to use unfair, fraudulent, and unlawful tactics to induce members of the general public to obtain loans. Defendants' fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendants and would like to be able to rely on Defendants' representations but cannot do so unless an injunction is issued.

161. Plaintiff individually seeks public injunctive relief, under the CLRA, to protect the general public from Defendants' false and misleading marketing and omissions.

162. In accordance with California Civil Code § 1782(a), on July 8, 2025, Plaintiff's counsel served Defendants with notice of their CLRA violations by certified mail, return receipt requested. A true and correct copy of those notices are attached hereto as Ex. C. If Defendants fail to provide appropriate relief for their

CLRA violations within 30 days of Plaintiff's notification letters, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**COUNT FOUR**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW Cal. Bus. & Prof. Code § 17500, *et seq.* (on behalf of Plaintiff and the Class)**

163. Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein.

164. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

165. Pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500 *et seq.*, "[i]t is unlawful for any . . . corporation . . . with intent . . . to perform services . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any . . . corporation to so make or disseminate or cause to be so made or so disseminated any such statement as part of a plan or scheme with the intent not to sell . . . those services . . . as so advertised."

166. Defendants' material misrepresentations and omissions alleged herein violate the FAL, including concealing the Hidden Fee and concerning the terms of their loans, the costs of financing, the costs of purchasing and installing their systems, and the true interest rates and APRs.

167. The FAL also provides that "[a]ny advertisement . . . soliciting the purchase . . . of a product or service . . . that requires, as a condition of sale, the purchase . . . of a different product or service . . . shall conspicuously disclose in the

advertisement the price of all those products or services." Cal. Bus. & Prof. Code § 17509.

168. Defendants' material misrepresentations and omissions alleged herein violate Cal. Bus. and Prof, Code § 17509.

169. Defendants' loan proposals and loan documents, which advertise its financial services, require, as a disclosed condition of sale, the purchase of a solar power system and, as an undisclosed condition of sale, the purchase and payment of the Hidden Fee.

170. Defendants knew or should have known that their misrepresentations and omissions were false, deceptive, and misleading.

171. With respect to omissions, Defendants at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendants had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Defendants concealed material information from Plaintiff and the Class; and (c) Defendants made partial representations which were false and misleading absent the omitted information.

172. Defendants' material misrepresentations and nondisclosures were likely to mislead reasonable consumers, existing and potential customers, and the public.

173. Defendants' misrepresentations and nondisclosures deceive and have a tendency to deceive the general public and reasonable consumers.

174. Defendants' misrepresentations and nondisclosures are material, such that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase and financial decisions.

175. Plaintiff and members of the proposed Class reasonably relied on Defendants' material misrepresentations and nondisclosures, in making their purchases and choosing to borrow from Defendants.

176. By their conduct alleged herein, Defendants induced Plaintiffs and Class members to make purchases and carry debt they otherwise would not have made or carried.

177. By their conduct alleged herein, Defendants received money from Plaintiff and the Class that it should not and would not have received otherwise, and that money is subject to restitution.

178. As a direct and proximate result of Defendants' FAL violations, Plaintiff and the proposed Class members lost money.

179. Defendants' conduct has caused substantial injury to Plaintiff, proposed Class members, and the public. Defendants' conduct is ongoing and is likely to continue and recur absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Defendants from committing such unlawful, unfair, and fraudulent business practices. Plaintiff further seeks an order granting restitution to Plaintiff and the Class in an amount to be proven at trial, and other equitable relief, including without limitation modification of their loan terms and payment requirements going forward, to conform to the interest rate and APR terms represented by Defendants and to reflect the actual costs of purchase and installation of their Systems (i.e., without the Hidden Fee).

180. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

181. Absent an injunction, Defendants will continue to engage in pervasive misleading marketing and to mislead members of the general public regarding their loans. Defendants' fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendants and would like to be able to rely on Defendants' representations but cannot do so unless an injunction is issued.

182. Plaintiff individually seeks public injunctive relief, under the FAL, to protect the general public from Defendants' false and misleading marketing and omissions.

183. Plaintiff and the Class lack an adequate remedy at law, including because Defendants' conduct is continuing, requiring injunctive relief not available and/or not entirely available under legal claims, and because monetary and other equitable remedies sought and available under this claim are not available and/or not entirely available under legal claims.

## COUNT FIVE
## NEGLIGENT MISREPRESENTATION
**(on behalf of Plaintiff and the Class)**

184. Plaintiff realleges all prior paragraphs of the Complaint as if set out fully herein.

185. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

186. Negligent misrepresentation occurs when (i) the defendant makes false statements, honestly but without reasonable grounds believing that they are true, (ii) the defendant intends to induce reliance on the false statements, (iii) reliance on the false statements by the plaintiff was justifiable, and (iv) the plaintiff was damaged as a result of such reliance.

187. As alleged herein, Defendants made false statements, i.e., representations, by, *inter alia*, presenting Plaintiff and the Class with putative interest rates that failed to account for the Hidden Fee and presenting APRs that failed to account for the real rate of interest.

188. These statements were made in the course of Defendants' business and in the course of a transaction in which they have a pecuniary interest because the Defendants' business is making loans, such as those made to Plaintiff and the Class, and Defendants generate financial revenue from same.

189. Further, Defendants made these statements for the purpose of inducing Plaintiff and the Class to rely on them in evaluating and accepting the loans that Defendants offered.

190. Plaintiff and the Class were justified in relying on Defendants' statements because, *inter alia*, consumers reasonably expect that creditors comply with all laws and regulations to which such creditors are bound and reasonably expect that the terms contained in a written contract are truthful.

191. If Defendants were not aware that their representations were false, then they were negligent in asserting them as true (and thereby making a false statement) because Defendants lacked a reasonable basis for believing them to be true and failed to exercise reasonable care or competence in communicating accurate and truthful information.

192. Defendants lacked a reasonable basis for believing their statements to be true because their statements are inconsistent with their practices and internal documentation.

193. Defendants failed to exercise reasonable care or competence because any reasonably careful or competent lender would have investigated and disclosed its own documented practices and avoided communicating untruthfully.

194. As alleged herein, Plaintiff and the Class were injured and suffered pecuniary loss.

195. Plaintiff, on behalf of himself and the Class, seeks damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

In order to prevent injury to the general public, Plaintiff individually requests that the Court enter a public injunction, under the UCL, FAL, and CLRA, enjoining Defendants from engaging in the false and misleading marketing practices alleged herein.

In addition, Plaintiff, individually and on behalf of the Class, prays for

the following relief:

1. certification for this matter to proceed as a class action pursuant to Federal Rule of Civil Procedure 23;
2. appointment of Plaintiff as representative of the Class;
3. appointment of counsel for Plaintiff as Class Counsel for the Class;
4. damages and statutory damages;
5. restitution;
6. permanent injunctive relief, and other equitable relief;
7. pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;
8. attorneys' fees and costs;
9. such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 8, 2025

*/s/ Roger N. Heller*
Roger N. Heller (CA Bar No. 215348)
rheller@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Mark P. Chalos (TN Bar No. 19328)*
mchalos@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
222 2nd Avenue South, Suite 1640
Nashville, Tennessee 37201-2379
Telephone: 615.313.9000
Facsimile: 615.313.9965

Brad Ponder (DC Bar No 1612774; AL Bar No: 0965-P56P)*
brad@ponderlegalgroup.com
**PONDER LEGAL GROUP**
3221 M Street, NW
Upper Floor
Washington, DC 20007
Telephone: 888.201.0305
Facsimile: 202.988.2135

**Pro Hac Vice* application to be submitted

*Attorneys for Plaintiff and the Proposed Class*